No. 33,469

U. S. KISTLER, Guardian of the Person and Estate of JOHN ALBERT KISTLER, a Minor Child, *Appellant*, v. THE FITZPATRICK MORTGAGE COMPANY, HELEN M. DICKERSON, O. W. DICKERSON et al., *Appellees*.

(71 P. 2d 882)

Opinion filed October 9, 1937.

*Ralph Knittle* and *David Ritchie,* both of Salina, for the appellant.

*Z. C. Millikin* and *W. C. Millikin,* both of Salina, for appellee Helen M. Dickerson.

The opinion of the court was delivered by

HARVEY, J.: This was an action to set aside a judgment alleged to be void. The trial court made findings of fact and rendered judgment for defendants. Plaintiff has appealed.

The facts disclosed by the record may be stated briefly as follows: William J. Kistler, a resident of Salina and the owner of a residence property there, died in July, 1926. He left surviving him his widow, Maria Kistler; a son, U. S. Kistler; and a grandson, John Albert Kistler, being the son of U. S. Kistler. He left a will, item II of which reads:

"I give, devise and bequeath unto my beloved wife, Maria Kistler" (the described residence property in Salina), "during her natural life, and from and after her death to my grandson, John Albert Kistler, to have and to hold the same absolutely and forever."

The will was duly probated; the widow elected to take under the will. The son, U. S. Kistler, and his family moved into the home with the widow. By 1930 they wanted to borrow money on the property. In preparation for that, and on April 5, 1930, Maria Kistler brought an action in the district court of Saline county against her grandson, John Albert Kistler, then eight years of age. The petition alleged the relationship of the parties and that the will had been probated, and set out a copy of the will and alleged:

". . . that the devise of real estate made in said will in item II thereof created in the plaintiff that form of estate in real property known and designated as an estate tail special, which may be converted to a fee-simple estate by any proper and legal conveyance of the land by plaintiff, but that because of the unfamiliarity with such estates on the part of the general public and many members of the bar, it is necessary that there be an interpretation of said will, particularly of that portion contained in the paragraph marked item II, construing said clause or paragraph, and that the court should find, adjudge and decree that said will devised to the plaintiff an estate tail special for the reason that plaintiff finds it necessary to convey and dispose of said real estate."

The prayer was that the will be construed as creating an estate tail in plaintiff, and for such other legal or equitable relief as the court deems proper. Plaintiff also asked that a guardian *ad litem* be appointed for defendant.

Service of summons was made upon defendant as provided by law, and thereafter the court appointed a capable, experienced attorney as guardian *ad litem* for defendant. He filed an answer which contained a general denial of the allegations of the petition, except those pertaining to the relationship of the parties and probate of the will, and alleged:

". . . defendant specifically denies that said clause or paragraph of said will devised an estate tail in the plaintiff, and avers that same devised an estate for life in her with the remainder over [to] the defendant, and that the court should so adjudge and decree."

The prayer was that item II of the will be interpreted and construed, and that the court find, adjudge and decree that defendant was the owner of an estate in remainder, and the plaintiff a life estate in and to the real property described, and for such other relief as to the court might seem proper.

In that case the trial court found that both plaintiff and defendant prayed for the clause in the will to be construed and interpreted; that the clause should be construed and interpreted, and further found that the clause devised to Maria Kistler that form of estate in the real property known and designated as an estate tail, which might be converted into a fee-simple estate by her conveyance thereof; that said Maria Kistler then had such an estate in such real property, and that the defendant, John Albert Kistler, had no present vested right, interest or estate therein whatever. The court rendered a decree in harmony with these findings.

In a few days after this decree was rendered Maria Kistler conveyed the property by a deed to her son, U. S. Kistler, and soon thereafter U. S. Kistler and wife mortgaged the real property to the Fitzpatrick Mortgage Company to secure a note for $2,700. At that time they presented to the mortgage company an abstract of title to the property showing, among other things, the proceedings and decree of the court above mentioned. A few months later U. S. Kistler and wife conveyed the property to Maria Kistler, subject to the mortgage. Before the maturity of the note secured by the mortgage the Fitzpatrick Mortgage Company sold and assigned the note and mortgage to Helen M. and O. W. Dickerson, who paid therefor the sum of $2,740.50, being the amount of the note, with accrued interest. In making the loan the Fitzpatrick Mortgage Company acted in good faith, relying upon the title to the property as shown by the abstract, including the court decree above mentioned. The Dickersons, in purchasing the note and mortgage, acted in good faith, relying upon the mortgage company's approval of the title.

In January, 1931, Maria Kistler died intestate, leaving U. S. Kistler, her son, as her sole heir at law. Thereafter the payments became delinquent on the note and mortgage, and U. S. Kistler made an agreement with the Dickersons by which he conveyed the property to them, and they executed with him a contract which gave him the option to repurchase the property within a stated time at a sum named.

On May 16, 1934, Josie Kistler, wife of U. S. Kistler, having been appointed guardian of the estate of John Albert Kistler, commenced this action in the district court of Saline county to have the judgment in the former action, rendered April 14, 1930, declared void. Since the filing of the action Josie Kistler has died and U. S. Kistler succeeded her as guardian of the estate of John Albert Kistler.

In this action plaintiff alleged the above facts more in detail than as here stated, and further alleged that the will gave Maria Kistler a life estate in the property and vested in John Albert Kistler a vested remainder in fee; that in the former action plaintiff's attorney represented to the guardian *ad litem* that the will created an estate tail; that the guardian *ad litem* relied upon such representations, and that there was no real contest, and that the judgment rendered in the former action is wholly void for the reason the court did not have jurisdiction; that no issue of fact or of law was raised by the pleadings, and that the court had no right or authority to render the judgment it did render. It was further alleged that upon the death of Maria Kistler plaintiff became vested with a fee-simple estate in and to the real property. The Fitzpatrick Mortgage Company, the Dickersons and another were named defendants. It was alleged defendants claim some right, title or interest in or to the property; that such claims constitute clouds upon plaintiff's title; asked that they be required to set them up, and that all such claims be adjudged to have no force or effect. The prayer was that the judgment of April 14, 1930, in the former action, be adjudged to be void, that defendants be adjudged to have no title to or lien upon the property, and that the title to the property be quieted in plaintiff.

The answer of the Dickersons, as defendants, contained a general denial of matters not admitted, alleged the facts respecting the parties and their relation to the controversy, the action to construe the will, the deed and mortgage, and their purchase of it, substantially as above set out. They further alleged the mortgage was made in good faith, in reliance upon the abstract of title and the judgment of the court construing the will, which judgment had not been appealed from and became final, and that the purchase of the note and mortgage by defendants was made in good faith. Plaintiff's reply was a general denial. The Fitzpatrick Mortgage Company filed a disclaimer of any interest in the property. The action was tried to the court and taken under advisement. Thereafter the court made and filed its findings of fact substantially as above stated. With respect to the judgment in the action to construe the will the court found that—

". . . both attorneys were present. Probably no evidence was taken, but plaintiff's attorney stated the legal proposition to the court, and it was acquiesced in by the guardian *ad litem*, and the court signed up the journal entry as prepared by plaintiff's attorney, and approved by the guardian

*ad litem.* The journal entry, among other things, recited that the court had read the pleadings, was fully advised in the premises, and that clause 2 of the will should be construed and interpreted. The judgment recited that the will was construed, and that the second paragraph devised to Maria Kistler an estate tail, which might be converted into fee simple by conveyance, and that John Albert Kistler had no present vested right, interest or estate whatever in said real estate."

As one of its conclusions of law the court ruled that the judgment rendered in the action to construe the will is not void or subject to vacation in this action. Judgment was rendered for defendants.

Plaintiff, as appellant in this court, first contends that the will of William J. Kistler did not create an estate tail in Maria Kistler. For the purpose of this appeal we may agree with appellant on this point and say that the court, in the action to construe the will, reached a wrong conclusion. Even defendants in this action do not contend that the former judgment was correct. But an erroneous judgment is something distinct from a void judgment. Where the court has jurisdiction of the subject matter of the action and of the parties a judgment within the issues raised by the pleadings, even if erroneous, is not void. If not appealed from, and permitted to become final, it is binding upon the parties.

(33 C. J. 1064, 1079; 34 C. J. 508; Vanfleet, Collateral Attack on Judicial Proceedings, 71, 74, 82; *Sweet v. Ward,* 43 Kan. 695, 23 Pac. 941; *Carter v. Hyatt,* 76 Kan. 304, 308, 91 Pac. 61; *Duphorne v. Moore,* 82 Kan. 159, 107 Pac. 791; *Peterson v. Peterson,* 121 Kan. 212, 246 Pac. 506; *Skaer v. Capsey,* 127 Kan. 383, 386, 387, 273 Pac. 464; *Crawford County Comm'rs v. Radley et al.,* 134 Kan. 704, 8 P. 2d 386.)

This doctrine is applicable to actions to construe wills. (69 C. J. 895; *Cross v. Hodges,* 124 Kan. 672, 261 Pac. 585.) There is some general authority to the effect that a court of equity will not entertain an action where the sole purpose thereof is a construction of a will without asking any further relief (69 C. J. 858), in the absence of a statute authorizing it to do so. That never has been the rule in this state, as shown by the following list of cases, which is not intended to be complete:

*McNutt v. McComb,* 61 Kan. 25, 58 Pac. 965; *Durboraw v. Durboraw,* 67 Kan. 139, 72 Pac. 566; *Mollenkamp v. Farr,* 70 Kan. 786, 79 Pac. 646; *Hurst v. Weaver,* 75 Kan. 758, 762, 90 Pac. 297; *Rooney v. Hurlbut,* 79 Kan. 231, 98 Pac. 765; *Blair v. Blair,* 82 Kan. 464, 108 Pac. 827; *Twist v. Twist,* 91 Kan. 803, 139 Pac. 377; *Salis-*

bury v. Salisbury, 92 Kan. 644, 141 Pac. 173; Neil v. Stuart, 102 Kan. 242, 169 Pac. 1138; Scott v. Gillespie, 103 Kan. 745, 176 Pac. 132; Orphans' Home Association v. Williams, 104 Kan. 316, 178 Pac. 616, 179 Pac. 973; Treadwell v. Beebe, 107 Kan. 31, 190 Pac. 768; Hodges v. Lanyon, 108 Kan. 407, 195 Pac. 882; Corbett v. Skaggs, 111 Kan. 380, 207 Pac. 819.

Perhaps our early statutes inferentially authorized such an action, but we need not now examine them carefully on that point, for since 1921 we have had a specific statute authorizing such an action (G. S. 1935, 60-3127); hence, the district court had jurisdiction of the subject matter of the action. In this case the pleadings disclosed an actual controversy between the parties as to the construction of the will, and both parties asked that it be construed. It is conceded the court had jurisdiction of the person of defendant by proper service of process. A guardian, duly appointed for him, filed an answer embodying the statutory requirement; hence, there was jurisdiction of the person of defendant.

Appellant next contends the petition did not contain sufficient facts to challenge the attention of the court to its merits and to authorize the court to act. But that can hardly be said to be true. The petition set out the will, alleged there was some uncertainty or lack of understanding as to the meaning of certain language in it, gave the pleader's interpretation of the language, and asked the court to construe the language. Perhaps that is all that was essential. (Mansfield v. Crane, 116 Kan. 2, 225 Pac. 1087.) But this was not the only pleading before the court. The answer of the guardian ad litem asked that the same language of the will be construed, and alleged that it meant something entirely different from that contended for by plaintiff. This presented a definite issue to the court.

Appellant next contends that what the court did was to reform the will rather than to construe it, and he cites Hoover v. Roberts, 144 Kan. 58, 58 P. 2d 83, and authorities there cited, holding the court had no authority to reform the will. This reasoning is based upon the view that the court gave an erroneous interpretation to the language of the will. This is entirely distinct from reformation as attempted in the Hoover case. Appellant's argument would force the court to hold every construction of a will, later conceived to be erroneous, to be a reformation of a will. This, of course, could not be true.

Appellant refers to the fact that the guardian *ad litem* at the time of the hearing of the first case acquiesced in the statement made to the court by the attorney for the plaintiff, and from that argues that it was a consent decree. The record, however, discloses that the trial court gave its independent judgment to the consideration of the issues presented by the pleadings and itself determined the construction which should be placed upon the will.

In a supplemental brief appellant seeks some relief from the former judgment under G. S. 1935, 60-3007, 8th clause, which provides that the district court shall have power to vacate or modify its own judgment at or after the term at which such judgment or order was made: "For errors in a judgment, shown by an infant in twelve months after arriving at full age." It is not clear from the record that any question under this section was presented to the trial court, and nothing was said about it in the pleadings. However, appellant argues that of necessity it has been in the case from the beginning. We shall consider the question without determining whether appellant is really entitled to be heard upon it. This section and clause, or one tantamount to it, have been in our statutes throughout the history of the state, and yet we are cited to no instance, and our own research discloses none, in which relief has been granted under it, and it has been referred to in but a few cases. Evidently this statute is designed to afford an infant such equitable relief as it would have been entitled to under the equity practice prevailing at the time the statute was first adopted. This is well stated in 15 R. C. L. 733, 734, as follows:

"It appears to be a well-settled rule of equity practice that an infant who has been wronged by a decree of a court of chancery may maintain an original bill to impeach or avoid the decree. And, unlike an adult, he may question such a decree without applying for a rehearing or filing a bill for review. Equity considers it fraudulent to take advantage of the incompetency of an infant to defend himself, and therefore, if an erroneous decree has been obtained against him and the error is not in the judgment of the court, but in the facts on which the judgment is founded, or if there has been any deception or any surprise upon the court, the infant may obtain equitable relief in regard to such decree. He may exercise this right during his minority, or within the period allowed after majority, for the prosecution of a writ of error to reverse an erroneous decree. . . . But an infant cannot avoid a judgment or decree against him merely on the ground of infancy, and he cannot impeach such a judgment or decree by an original bill, except upon grounds that would be available to an adult. . . . If the relief sought includes persons who have acquired the title to property in reliance upon a judgment regular upon its face without any notice of any vice whatever in

the proceedings and for a valuable consideration, equity will not interfere as against them. Ordinarily in a proceeding in equity to annul a judgment, all of the parties to the judgment should be joined."

In this case the petition attacked the judgment in the former action as being void. It was not framed as a suit in equity by a minor seeking relief from his erroneous judgment. Perhaps it would have served no better purpose if it had been so framed, for it is well settled in this state that a minor properly served with summons in a civil action, if represented by a duly appointed guardian *ad litem*, is bound by the judgment "precisely as an adult is bound." (*Huls v. Gafford Lumber & Grain Co.*, 120 Kan. 209, 243 Pac. 306; *Fry v. Heargrave*, 129 Kan. 547, 549, 283 Pac. 626; *John Hancock Mut. Life Ins. Co. v. Vandeventer*, 141 Kan. 767, 44 P. 2d 251.) The rule is the same elsewhere. (31 C. J. 1166.) More than that, the parties here are not the same as in the former case. Maria Kistler is not living, and the principal defendants, the Dickersons, in good faith purchased the mortgage made in good faith by the Fitzpatrick Mortgage Company, relying upon the judgment in the action to construe the will.

The result is, the judgment of the trial court must be affirmed. It is so ordered.